UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY LOPEZ, CDCR #H-30604,<br><br>            Plaintiff,<br><br>vs.<br><br>ALICIA GARCIA; L. KASTNER,<br><br>            Defendants. | Civil No.   11cv1079 BTM (PCL)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(c)**<br><br>**(ECF No. 45)** |

**I.     Procedural Background**

Michael Anthony Lopez ("Plaintiff"), a state prisoner currently incarcerated at Centinela State Prison ("CSP") located in Imperial, California, is proceeding pro se and *in forma pauperis* ("IFP") in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Initially, this action was filed by two Plaintiffs, Tyrone Rogers and Michael Anthony Lopez, who are state inmates currently incarcerated at Centinela State Prison. On May 17, 2011, the Court severed the claims and the parties. Plaintiff Rogers was permitted to proceed in *Rogers v. Giurbino, et al.*, S.D. Cal. Civil Case No. 11cv0666 BTM (PCL), while the Clerk of Court was directed to open a new action for Plaintiff Lopez. That new action is the action that is currently before this Court. On September 6, 2011, this Court granted Plaintiff's Motion to Proceed IFP, denied his Motion for Appointment of Counsel, dismissed Defendants Giurbino, Ayala, Narvis, Foston, "unnamed Defendant 1," and "unnamed Defendant 2," as the claims

against these Defendants related to the claims brought solely on behalf of Plaintiff Rogers. (ECF No. 7 at 3.) The Court further found that Counts 2 and 3, Plaintiff Lopez's First Amendment claims and Fourteenth Amendment due process claims survived the sua sponte screening process required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). (*Id.*)

The remaining Defendants filed a Motion to Dismiss on December 2, 2011. (ECF No. 17.) The Court denied Defendant Kastner and Garcia's Motion to Dismiss and granted Uribe, Brown, Grannis and Hodge's Motion to Dismiss. (*Id*. at 7.) Plaintiff was then given the option of choosing to proceed with the claims that remained or file an Amended Complaint. (*Id.* at 8.) Plaintiff filed a notice of intention to proceed with Counts 2 and 3 in his Complaint against Defendants Kastner and Garcia. (ECF No. 24.) Defendants Garcia and Kastner filed their Answer on March 30, 2012. (ECF No. 25.)

Currently before this Court is Defendant Garcia and Kastner's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56. Plaintiff has filed an Opposition to which Defendants have filed a Reply. (ECF Nos. 51, 52.) In addition, Defendants have filed Objections to Plaintiff's evidence in support of his Opposition. (ECF No. 52.)[1]

## II.    Plaintiff's factual allegations

Plaintiff alleges that his true name is "Michael Anthony Lopez" and claims that this is supported by the abstract of judgment issued in Orange County Superior Court following his criminal conviction. (*See* Compl. at 10.) On August 19, 2009, Plaintiff learned from an Investigator with the Orange County Alternate Defenders Office that his legal mail was being returned by "CEN Mailroom staff supervisor L. Kastner." (*Id.*) Specifically, Plaintiff was informed his mail was being "tampered with" and several pieces of legal mail from July to October 2009 had been returned to the Investigator. (*Id.*) Plaintiff alleges that the CEN mailroom staff never informed him of the attempts to deliver his mail. (*Id.*)

On August 8, 2009, Plaintiff requested a copy of a "Special Purpose Letter" from the CEN mailroom in order for him to be able to obtain a summary of his outgoing and incoming

---

[1]  In light of the Court's ruling below, the Court overrules Defendants' objections as moot.

1  legal mail. (*Id.*) On September 2, 2009, Defendant Alicia Garcia, Office Service Supervisor, interviewed Plaintiff with regard to his mail. (*Id.*) Plaintiff was informed by Defendant Garcia that any mail addressed to "Michael Lopez" was being returned because in the CDCR's "Distributed Data Processing System" ("DDPS") Plaintiff is listed as "Frederick Lopez,"[2] not Michael Anthony Lopez. (*Id.*) Plaintiff had received other legal mail addressed to Michael Lopez. (*Id.* at 10-11.) Plaintiff alleges that Defendant Garcia failed to notify him of the mail that was rejected and further she failed to "properly correct known DDPS discrepancy." (*Id.*)

**III.   Defendants' Motion For Summary Judgment**

   **A.   FED.R.CIV.P. 56 Standard of Review**

Rule 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Nat'l Ass'n of Optometrists & Opticians v. Harris,* 692 F.3d 1144, 1147 (9th Cir. 2012)(quoting FED.R.CIV.P. 56(a)); *see also Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED.R.CIV.P. 56(c)); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Bias*, 508 F.3d at 1218. To avoid summary judgment, the non-moving party is "required

---

[2] In the papers submitted by both Plaintiff and Defendants, this name is spelled as Frederick and Frederick.

1  to present significant, probative evidence tending to support h[is] allegations," *Bias*, 508 F.3d
2  at 1218 (citations omitted), and must point to some evidence in the record that demonstrates "a
3  genuine issue of material fact [which], with all reasonable inferences made in the plaintiff[]'s
4  favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School*
5  *Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56; *Celotex*, 477 U.S. at
6  323). "The substantive law determines which facts are material; only disputes over facts that
7  might affect the outcome of the suit under the governing law properly preclude the entry of
8  summary judgment." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1147 (citing *Anderson v. Liberty*
9  *Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The opposing party cannot rest solely on conclusory
10 allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  Instead, to
11 demonstrate a genuine issue requiring trial, the opposing party "must do more than simply show
12 that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587
13 (citation omitted).

14       The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All
15 reasonable inferences that may be drawn from the facts placed before the court must be drawn
16 in favor of the opposing party. *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences are
17 not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate
18 from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp.
19 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

20       **B.**     **Defendants' Arguments**

21       Defendants seek summary judgment of Plaintiff's First and Fourteenth Amendment
22 claims. (*See* Defs.' Memo of Ps & As in Supp. of MSJ at 11-14.) In addition, Defendants argue
23 that they are entitled to qualified immunity as to all of Plaintiff's claims. (*Id.* at 15-16.)

24           1.     First Amendment right to receive mail

25       The crux of Plaintiff's claim arises from the undisputed fact that the an unidentified staff
26 member with the CDCR mistakenly inputted his name into their inmate tracking system that was
27 used until the end of 2009. (*See* Declaration of L. Kastner at ¶¶ 3, 11; Pl.'s Depo. at 10:9-22.)
28  This inmate tracking system was known as the "Distributed Data Processing System," and was

referred to by prison authorities as "DDPS." (Kastner Decl. at ¶ 3.) The purpose of this tracking system is to "track inmate movements, housing, classification levels, job assignments, inmate funds, medical information, mental health information, visitors and visits, restitution fines, and canteen inventory and sales." (*Id.*)

Plaintiff's name on both his birth certificate and his abstract of judgment is "Michael Anthony Lopez." (*See* Pl.'s Dep. at 10:20-22; Defs.' Req. for Judicial Not., Ex. 3.) However, when Plaintiff's information was entered into the "DDPS," he was mistakenly identified as "Fredierick Lopez" who is Plaintiff's brother. (Kastner Decl., Ex. A.) As a result, it is undisputed that mail that was delivered to Centinela state prison addressed to "Michael Anthony Lopez" was returned to sender on occasion on the grounds that the addressee listed did not match the information in the CDCR's DDPS tracking system. (*Id.* at ¶ 10.)

Plaintiff has a First Amendment right to receive mail. However, this right is subject to "substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005) (citations omitted.) Plaintiff claims in his Complaint that he learned in August of 2009 from Armando Lopez, an Investigator with the Orange County Alternate Defenders' Office, that mail he sent to Plaintiff was returned as "rejected" by the CEN mailroom staff supervisor Defendant Kastner. (*See* Compl. at 10.) Investigator Lopez testifies in his deposition that he recalls mailing at least one package to Plaintiff that was returned. (*See* A. Lopez Dep. at 25:24-25.) Investigator Lopez recalls that this package "looked kind of scuffed up" upon return but did not appear that it had been opened. (*Id.* at 29:12-22.) In the first package, Investigator Lopez indicated that there was, among other items, a preliminary transcript from Plaintiff's 1996 criminal proceedings. (*Id.* at 32:3-19.)

Defendant Kastner indicates in his declaration that two packages addressed to Michael Anthony Lopez in July and August of 2009 were returned to the sender because the name did not match the information in the DDPS which listed Plaintiff as Fredierick Lopez. (*See* Kastner Decl. ¶ 10.) Defendant Garcia states in his declaration that he was acting as the "mail room supervisor" at CEN for the time period set forth in Plaintiff's Complaint. (*See* Declaration of

1  A. Garcia at ¶ 2.) In this declaration, Defendant Garcia states that legal mail and first or third
2  class mail were treated differently. (*Id.* at ¶ 5-6.) When an inmate received first class or third
3  class mail, the mail room staff would open and inspect that mail. (*Id.*) Because of the volume
4  of this type of mail, the inmate's name was not cross-checked to the DDPS database. (*Id.* at ¶
5  5.) However, as for legal mail, the mailroom staff "treated legal mail differently" due to the
6  "importance of ensuring the timely delivery of legal mail." (*Id.* at ¶ 6.) The policy of mailroom
7  staff with regard to legal mail was to check the name and CDCR number on the package and
8  compare this to the DDPS database. (*Id.*) Because legal mail was only opened in the presence
9  of an inmate if the correctional officers were inspecting for contraband, legal mail that did not
10 match the DDPS database would be returned to sender unopened. (*Id.* at ¶ 7.)

11  A prison regulation or policy that might otherwise unconstitutionally impinge on an
12 inmate's First Amendment rights will survive a First Amendment challenge, however, if it is
13 "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89
14 (1987). In determining whether a prison regulation is reasonably related to a legitimate
15 penological interest, the court considers the following factors: (1) whether there is a valid,
16 rational connection between the regulation and the interest used to justify the regulation; (2)
17 whether prisoners retain alternative means of exercising the right at issue; (3) the impact the
18 requested accommodation will have on inmates, prison staff, and prison resources generally; and
19 (4) whether the prisoner has identified easy alternatives to the regulation which could be
20 implemented at a minimal cost to legitimate penological interests. *Turner*, 482 U.S. at 89-90.

21  Plaintiff states in his Opposition that he is not challenging the constitutionality of the
22 CDCR's regulations that "requires incoming mail to reflect the correct inmates's name and
23 CDCR number" but rather Plaintiff has a "right under the First Amendment to receive mail
24 addressed to the inmate's name as reflected on the abstract of judgment by which the inmate was
25 delivered to the custody of the CDCR." (Pl.'s Opp'n to MSJ at 11.) That may be the case,
26 however, there is no evidence in the record that either of these Defendants had any responsibility
27 for entering the wrong name into the database.
28 / / /

A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986).

Plaintiff testified in his deposition that he first became aware of the CDCR's error in identifying him as his brother in 1992. (*See* Pl.'s Dep. at 10-14.) Plaintiff did not arrive at CEN until December 23, 2008. (*Id.* at 7:23-24.) Defendants Kastner and Garcia both state in their declarations that they met with Plaintiff, upon discovery of the discrepancy of his name, and informed him that he must meet with his correctional counselor to change his name to match the abstract of judgment. (*See* Kastner Decl. at ¶ 11; Garcia Decl. at ¶9.) Plaintiff admits that he has not taken any action to change his name from Frederick Lopez to Michael Anthony Lopez since he first discovered the discrepancy in 1992. (*See* Pl.'s Dep. at 9-12.) There is no evidence in the record to find that either Defendant was in any way responsible for the mistaken identity of Plaintiff in the CDCR's database. There is no evidence in the record that either Defendant was responsible for the incorrect information or that it was their duty to correct the information. Plaintiff knew of the discrepancy for seventeen (17) years prior to the events that occurred in this case yet it appears he never addressed the issue with any other CDCR official. There is no evidence in the record that Plaintiff followed the directions to meet with his correctional counselor to correct the error. Thus, there is no genuine issue of material fact that these Defendants can be held liable to for the failure of Plaintiff to receive his mail.

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment claims as to Plaintiff's First Amendment claims regarding the right to receive mail.

///

### 2. Fourteenth Amendment due process claims

Defendants move for summary judgment on Plaintiff's claims that they violated his Fourteenth Amendment due process rights. In his Opposition, Plaintiff argues that Defendants violated his right to due process under the Fourteenth Amendment when they "failed to notify Plaintiff of returned mail and the law was clear to notify Plaintiff." (Pl.'s Opp'n at 13.) Plaintiff states in his deposition the failure to notify Plaintiff of the returned mail occurred on four occasions, July 9, July 20, August 4 and October 20, 2009. (*Id.* at 56-20-25.) Defendant Kastner has attached a copy of the CDCR's DDPS database as of September 1, 2009 which shows Plaintiff's name as "Frederick Lopez." (*See* Kastner Decl., Ex. A.) The mail that was returned was addressed to "Michael Anthony Lopez" which did not match the CDCR's database. (*Id.* at ¶ 10.) Therefore, there is no evidence in the record to suggest that Defendant Kastner should have notified Plaintiff because there is no evidence in the record to demonstrate that either Defendant Kastner or Garcia knew Plaintiff was "Michael Anthony Lopez" in July or August 2009.

On September 2, 2009, Plaintiff met with Defendant Garcia and Kastner who explained to him the process by which he needed to change his name. (*See* Garcia Decl. at ¶ 4; Kastner Decl. at ¶ 11.) As for the mail that was returned on October 20, 2009, the evidence in the record is undisputed that Defendant Kastner did inform Plaintiff that this mail was being returned for the same reasons the previous mail was returned and Kastner made a specific notation to Plaintiff stating "I met with you once before regarding this issue - please advise sender, your attention to this matter is greatly appreciated." (Kastner Decl., Ex. B.) Plaintiff does not submit any evidence to contradict Defendants' evidence that he did receive notification that his mail had been returned on October 20, 2009.

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment claims as to Plaintiff's Fourteenth Amendment due process claims.

/ / /

/ / /

/ / /

### C. Qualified Immunity

Finally, Defendants argue they are entitled to qualified immunity. Because the Court has found no triable issue of fact exists to show Plaintiff's First or Fourteenth Amendment rights were violated, however, it need not reach any issues regarding qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

## IV.     Conclusion and Order

For all the reasons set forth above, the Court hereby GRANTS Defendants' Motion for Summary Judgment pursuant to FED.R.CIV.P. 56(c) (ECF No. 45).

The Clerk shall enter judgment for Defendants and shall close the file.

**IT IS SO ORDERED**.

DATED: March 3, 2014

BARRY TED MOSKOWITZ, Chief Judge
United States District Court